FILED
SEP - 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America f/u/b
THE LANE CONSTRUCTION CORPORATION, d/b/a
SENATE ASPHALT
14850 Conference Center Drive, Suite 210
Chantilly, Virginia 20151

and

THE LANE CONSTRUCTION CORPORATION, d/b/a SENATE ASPHALT COMPANY
14850 Conference Center Drive, Suite 210
Chantilly, Virginia 20151

Plaintiffs,

v.

WILLIAM V. WALSH CONSTRUCTION CO., INC.
SERVE: Prentice Hall Corporation
System1090 Vermont Ave., N.W.
Washington, DC 20005

and

MCKISSACK & MCKISSACK OF WASHINGTON, INC.
SERVE: Ms. Deryl Mckissack
1401 New York Avenue, N.W.,
Suite 900,
Washington, DC 20005

and

ST. PAUL FIRE AND MARINE INSURANCE COMPANY
SERVE: Corporation Service Company
11 S. 12th Street
Richmond, VA 23218

Defendants.

Ca

Case: 1:07-cv-01576
Assigned To : Walton, Reggie B.
Assign. Date : 9/4/2007
Description: Contract

1

COMPLAINT FOR MONEY DAMAGES

United States of America f/u/b The Lane Construction Corporation d/b/a Senate Asphalt and Senate Asphalt Company ("Lane"), the Plaintiff herein, for its cause of action against the Defendants, states as follows:

PARTIES

1. The Lane Construction Corporation ("Lane") or ("Plaintiff"), is a Connecticut corporation with its principal place of business in Meriden, Connecticut. Lane operates a paving division in the District of Columbia under the name Senate Asphalt.

2. William V. Walsh Construction Co., Inc. ("Walsh") is a Maryland corporation with its principal place of business in Rockville, Maryland.

3. McKissack & McKissack of Washington, Inc. ("McKissack") is a Maryland corporation with its principal office in Baltimore, Maryland.

4. St. Paul Fire and Marine Insurance Company ("Surety" or "St. Paul") is a corporation which is engaged in the business of writing bonds and undertakings for construction projects including projects in the District of Columbia. St. Paul is a Minnesota corporation with its principal place of business in St. Paul, Minnesota.

JURISDICTION AND VENUE

5. Subject matter jurisdiction of this action is founded upon 40 USC § 3131, et seq. and alternatively on 28 U.S.C. § 1332, the parties being citizens of different states and the matter in controversy exceeding the sum of $75,000.00

6. The project referenced herein and the claims specified herein were located or arose wholly within the District of Columbia.

## GENERAL ALLEGATIONS

7. Lane is a road builder and paving contractor which operates in the District of Columbia and elsewhere.

8. Walsh is a general contractor and was the principal on the bonds written by St. Paul which are the subject of these proceedings.

9. McKissack is a construction design and management company and is an obligee on the bonds written by St. Paul.

10. McKissack contracted with the United States of America through the Department of the Interior/National Park Service to perform certain work in connection with the security and preservation of the Jefferson Memorial, contract # 144 3C 3059020904 ("the Project").

11. McKissack hired Walsh to be the general contractor on the project. Walsh subcontracted a portion of its work under its contracts to Lane, including certain asphalt paving work as more particularly described in the contract between Lane and Walsh, attached hereto as **Exhibit A**.

12. Upon information and belief, pursuant to the Act of Congress, approved August 24, 1935, as amended, the Defendant McKissack as principal, and the Defendant St. Paul as surety, duly executed the standard government form of payment bond to the United States of America, whereby they bound themselves jointly and severally up to the penal sum specified in the bond conditioned that if the principal should promptly make payment to all persons supplying labor and materials in the prosecution of the work provided in the contract, and any subsequent modifications thereof, notice of which modifications to the surety being waived, then the obligation to be void; otherwise to

remain in full force and effect. The Defendant Walsh, as principle also executed a payment bond for the project. The designated bond number on the bond was 400SU0997 and a copy thereof is attached as **Exhibit B**.

13. The bond was modified to include McKissack as an obligee on the bond pursuant to a dual obligee rider attached to the bond.

14. The bond was accepted by the United States of America, and upon such acceptance, the contract for the construction and completion of the Project was awarded to McKissack and/or Walsh.

15. McKissack, Walsh, and St. Paul provided payment bonds on the Project wherein they bound themselves jointly and severely to make payment to claimants under the bond. Lane is a proper claimant and has fulfilled all requirements under the bond.

COUNT I

(Breach of Contract – Walsh)

16. The allegations of paragraphs 1-15 are incorporated herein by reference.

17. Lane and Walsh entered into a subcontract agreement to provide milling and paving work on the Project. Walsh breached the subcontract agreement by failing to pay for work as and when due, and/or failing to properly administer the contract and properly process change order requests.

18. A reasonable time has passed without Walsh paying Lane for the work performed pursuant to the subcontract and all conditions precedent to payment have been waived and/or prevented by the acts of Defendants.

19. As a result of Walsh's failure to pay Lane for the work performed, Lane has incurred and sustained loss, cost and damage in the amount of $336,160.18, for which sum Walsh is liable.

COUNT II

(Payment Bond – St. Paul and Walsh)

20. The allegations of paragraphs 1-19 are incorporated herein by reference.

21. St. Paul, as surety, and Walsh, as principal, issued labor and material payment bond number 400SU0997 ("the Bond") securing payment to subcontractors and suppliers providing labor and material to the Project for which McKissack had a contract with the Department of the Interior/National Park Service.

22. Pursuant to its subcontract with Walsh, Lane provided and furnished milling and paving work on the Project as specified in its invoices and agreement with Walsh, and otherwise satisfied all conditions and requirements for payment.

23. Lane has not been paid the agreed upon amount for furnishing the work and there is an amount due and outstanding on the contract of $336,160.18 together with interest and attorneys fees as set forth in the contract.

24. Walsh and St. Paul have breached their obligations to Lane under the contracted Bond by failing to pay the balance due pursuant to the contract.

25. More than ninety (90) days has elapsed since the date on which Lane last performed labor or supplied material to the Project.

26. Less than one (1) year has elapsed since Walsh and Lane ceased work on the Project.

27. Lane is a proper claimant under the terms of the Bond and has given all notices, if any, required under the Bond or applicable statute.

28. All conditions precedent to the filing of this suit have been fulfilled except to the extent that same may have been waived, prevented or excused by the actions of Defendants.

29. The amount justly due to Lane for labor and materials supplied to Walsh on the Project is $336,160.18, plus interest and attorneys fees.

30. Lane made demand upon Walsh to pay the amount due pursuant to the terms of the Bond, but Walsh has failed and refused to make payment.

COUNT III

(Payment Bond – McKissack)

31. The allegations of paragraphs 1-30 are incorporated herein by reference.

32. Pursuant to a dual obligee rider attached to the Bond, McKissack became an obligee on the Bond and the bond was intended to fulfill the requirements and objectives of the Miller Act.

33. Despite furnishing the work on the Project as specified in its invoices and the subcontract, Lane has not been paid for this work and there is an amount due and owing of $336,160.16 plus interest thereon and attorneys' fees.

34. McKissack has breached its obligations to Lane under the contracted Bond by failing to pay the balance due pursuant to the contract.

35. Lane is a proper claimant under the terms of the Bond and has given all notices, if any, required under the bond or applicable statute.

36.    All conditions precedent to the filing of this suit have been fulfilled except to the extent that same may have been waived, prevented or excused by the actions of Defendants.

37.    Lane has made demand upon McKissack for payment pursuant to the terms of the Bond, but McKissack has failed and refused to make payment.

38.    The amount justly due to Lane for labor and materials supplied on the Project is $336, 160.18, plus interest and attorneys fees.

WHEREFORE, Plaintiff, The Lane Construction Corporation d/b/a Senate Asphalt, respectfully requests that this Court enter judgment in its favor against Defendants William V. Walsh Construction Co., Inc., McKissack & McKissack of Washington, Inc., and St. Paul Fire and Marine Insurance Company jointly and/or severally in the amount of $336,160.18 together with interest thereon, attorneys fees, and costs of these proceedings.

Respectfully submitted,

Stephen J. Annino, DC 390252
KASIMER & ANNINO, P.C.
7653 Leesburg Pike
Falls Church, Virginia 22043
(703) 893-3914 Phone
(703) 893-6944 Fax

07-1576 RBW

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

United States of America f/u/b The Lane Construction Corporation d/b/a Senate Asphalt and
The Lane Construction Corporation d/b/a Senate Asphalt Company

88888

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Fairfax Cty, VA
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Kasimer & Annino, PC
7653 Leesburg Pike
Falls Church, VA 22043
(703) 893-3914

**DEFENDANTS**

William V. Walsh Construction, Co., Inc., McKissack & McKissack of Washington DC, and St. Paul Fire and Marine Insurance Co.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

Case: 1:07-cv-01576
Assigned To : Walton, Reggie B.
Assign. Date : 9/4/2007
Description: Contract

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**○ A. *Antitrust***

- ☐ 410 Antitrust

**○ B. *Personal Injury/ Malpractice***

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. *Administrative Agency Review***

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. *Temporary Restraining Order/Preliminary Injunction***

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. *General Civil (Other)*** OR **○ F. *Pro Se General Civil***

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

3

**O G. *Habeas Corpus/ 2255***

☐ 530 Habeas Corpus-General
☐ 510 Motion/Vacate Sentence

**O H. *Employment Discrimination***

☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)

*(If pro se, select this deck)*

**O I. *FOIA/PRIVACY ACT***

☐ 895 Freedom of Information Act
☐ 890 Other Statutory Actions (if Privacy Act)

*(If pro se, select this deck)*

**O J. *Student Loan***

☐ 152 Recovery of Defaulted Student Loans (excluding veterans)

**O K. *Labor/ERISA (non-employment)***

☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Labor Railway Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**O L. *Other Civil Rights (non-employment)***

☐ 441 Voting (if not Voting Rights Act)
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights
☐ 445 American w/Disabilities-Employment
☐ 446 Americans w/Disabilities-Other

**⊗ M. *Contract***

☐ 110 Insurance
☐ 120 Marine
☒ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholder's Suits
☐ 190 Other Contracts
☐ 195 Contract Product Liability
☐ 196 Franchise

**O N. *Three-Judge Court***

☐ 441 Civil Rights-Voting (if Voting Rights Act)

**V. ORIGIN**

◉ 1 Original Proceeding
O 2 Removed from State Court
O 3 Remanded from Appellate Court
O 4 Reinstated or Reopened
O 5 Transferred from another district (specify)
O 6 Multi district Litigation
O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

40 USC 3131 Miller Act

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** 336,160.18 Check YES only if demanded in complaint

**JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

**DATE** 8/31/07 9-4-07 **SIGNATURE OF ATTORNEY OF RECORD** [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# Exhibit A

# SUBCONTRACT AGREEMENT

SUBCONTRACT AGREEMENT MADE BETWEEN

THE CONTRACTOR: **WILLIAM V. WALSH CONSTRUCTION CO., INC.** AND

THE SUBCONTRACTOR: **Senate Asphalt**

**P.O. Box 71080 –Southwest Station, Washington, DC 20024**

PHONE No.: **(202) 479-1009** FAX No.: **(202) 479-1021**

**1. THE PROJECT**

WVW JOB NO.: **J-128** DATE: **March 19, 2004**

COST CODE: 502-002020000

OWNER'S NAME: **National Park Service**

OWNER'S CONTRACT NO.: C3059020904

JOB NAME: **Lincoln Circle and Approach Way Rehabilitation – Task Order 7**

LOCATION: Washington, DC

## SCOPE OF WORK

2. Subcontractor warrants that it is thoroughly familiar with the site conditions and the Prime Contract Documents (see **ATTACHMENT A**) and that the Subcontractor shall furnish anything necessary to complete in place the work as set forth in **ATTACHMENT B**, in strict accordance with the Prime Contract Documents (including plans and specifications, general provisions, general and special conditions). If subcontractor's proposal is made Attachment A, it is for scope purposes only. The terms and conditions as set forth in this agreement shall govern.

William V. Walsh reserves the exclusive and sole right to exercise all remaining contract options as described in the prime contract documents and as listed in **ATTACHMENT B**.

Also included are all security and safety requirements, compliance with federal, state and local regulations, OSHA and the owner's regulations, submittals, samples, surveys, transportation of your personnel, materials and equipment, coordination with William V. Walsh Construction and other trades, participation in scheduling, protection of existing elements and quality control.

## FLOW-DOWN RELATIONSHIP

3. The Subcontractor is bound to the Contractor in the same way the Contractor is bound to the Owner and shall assume toward the Contractor all the obligations and responsibilities which the Contractor assumes toward the Owner and shall have the benefit of all rights, remedies and redress against the Contractor, pursuant to the Prime Contract, has against the Owner, except that this Subcontract shall govern any inconsistent provision of the Prime Contract.

## THE SUBCONTRACT SUM

4. The Contractor shall pay the Subcontractor for the performance of this Subcontract in accordance with the schedule of values shown on **ATTACHMENT B** in partial payments as hereinafter described.

## PRICE AND PAYMENT

5. The Subcontract price shall be paid in partial payments, when received by the Contractor from the Owner, to Subcontractor for the payment for work in place and material on jobsite. Payment from the Owner is a specific condition precedent to the Contractor's obligation to pay the Subcontractor, the risks of nonpayment by the Owner being on the Subcontractor for its portion of the work in place or material on the job site. Ten percent (10%) retention shall be withheld until final payment is due except that retained funds will be reduced when and to the extent the Owner's retained funds withheld from the Contractor is reduced. Final payment shall be due after completion of all work, acceptance by the Owner, compliance with all Subcontract obligations, and receipt of final payment from the Owner, which items shall be conditions precedent to the making of final payment to Subcontractor. The Contractor is entitled to proof of payment for labor, material and services used before any payment is due. Material paid for shall belong to the Contractor, but shall remain in the care, custody and control of Subcontractor and be stored at Subcontractor's risk. The Subcontractor shall be responsible at all times for his labor and/or materials until same is accepted by the Owner. Subcontractor shall furnish guarantees and all other documents required by the Prime Contract for the Subcontractor's work, including releases of all claims and liens as a condition

07 1576

FILED

SEP - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

precedent for final payment. Partial releases may be required at the Contractor's option as a condition precedent to any partial payments for work completed and the Contractor may require the Subcontractor to certify and/or exhibit such other evidence that all entities furnishing labor, materials, and equipment under prior requisitions have been paid in full. Liquidated damages withheld by Owner will be assessed against Subcontractor for delay attributable to Subcontractor's fault. The Subcontractor shall itemize the Subcontract price as a basis for establishing value of work completed, and partial payments. Subcontractor agrees that it will not be paid by the Contractor for work and materials in place until ten (10) days after the Contractor's receipt of payment from the Owner. If the Contractor withholds making payment to the Subcontractor until the Subcontractor has complied with the aforesaid terms and conditions, the Subcontractor shall still diligently proceed with the work as required.

## LIABILITY AND INDEMNITY INSURANCE

6. The Subcontractor shall procure, at its sole cost and expense, the insurance coverage's set forth below, and shall maintain such coverage's in full force and effect as specified in this Paragraph. The Subcontractor shall include the Contractor [William V. Walsh] as an additional insured to the insurance policies described below. The insurance coverage afforded under the policies described herein shall be primary and non-contributing with respect to any insurance carried independently by the Contractor. All such insurance policies shall indicate that as respects the insured (whether named or otherwise), cross liability and sever ability of interests shall exist for all coverage's provided there under. In addition, all such insurance policies shall include a waiver of subrogation endorsement in favor of the additional insured. The insurance specified below shall be placed with insurance companies reasonably acceptable to Contractor, shall be written on an occurrence basis, and shall incorporate a provision requiring the giving of notice to Contractor at least thirty (30) days prior to the cancellation, non-renewal or material modification of any such policies. The Contractor shall promptly furnish the Contractor with certificates of insurance evidencing the insurance required hereunder, and shall not commence any services under this Agreement until such insurance is obtained.

(i) Commercial General Liability Insurance. A broad form Commercial General Liability Insurance Policy in form and substance reasonably acceptable to the Contractor and including, without limitation, appropriate endorsements adding the following coverage's: Premises and Operations Liability; Explosion, Collapse and Underground Damage Liability; Personal Injury Liability (with employee and contractual exclusions deleted); Broad Form Property Damage Liability; Contractual Liability supporting the Contractor's indemnification agreements in this Contract; Completed Operations and ~~Products Liability~~ for a period of not less than three (3) years following the Contractor's acceptance of the Project; and Independent Contractor's Protective Liability. The Commercial General Liability Insurance Policy must be written with a combined single limit of liability of not less than $1,000,000 for each occurrence of bodily injury and/or property damage and an annual aggregate of liability per project of not less than $2, 000,000 for bodily injury and/or property damage, and an annual aggregate of liability of not less than $2,000,000 for Completed Operations ~~and Products Liability~~.

(ii) Comprehensive Automobile Liability Insurance. A Comprehensive Automobile Insurance Policy in form and substance reasonably acceptable to the Contractor [William V. Walsh]. The Comprehensive Automobile Liability Insurance Policy must provide coverage for all owned, hired, rented and non-owned automobiles, and must be written with a combined single limit of liability of not less than $1,000,000 for each occurrence of bodily injury and/or property damage.

(iii) Worker's Compensation Insurance. A Worker's Compensation Insurance Policy in form and substance reasonably acceptable to the Contractor and in an amount not less than the statutory limits (as may be amended from time to time), including Employees Liability Insurance with limits of liability of not less than (i) $500,000 for bodily injury by accident, each accident, (ii) $500,000 for bodily injury by disease, each employee, and (iii) $500,000 aggregate liability for disease.

(iv) Property Insurance. A Property Insurance Policy covering all materials, equipment and other portions of the Work stored off-site or in transit; it being expressly acknowledged and agreed by the Contractor that it shall assume responsibility for any loss or damage to such property.

(v) Umbrella Liability Insurance. An Umbrella Liability Insurance Policy in form and substance reasonably acceptable to the Contractor [William V. Walsh] written in excess of the coverage's provided by the insurance policies described above in subsections (i),(ii) and the Employer's Liability in (iii). The Umbrella Liability Insurance Policy must be written with a combined single limit not less than $5,000,000 for each occurrence of bodily injury and/or property damage, and an annual aggregate of liability of not less than $5,000,000 for bodily injury and/or property damage.

The Contractor shall not insure nor be responsible for any loss or damage to tools, equipment or other property of any kind owned, rented or leased by the Subcontractors, sub-subcontractors, or their respective employees or agents. unless caused by the Contractor.

To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants and agents and employees of any of them from and against all injuries, claims, damages, losses and expenses, including but not limited to attorney's fees, arising directly or indirectly out of the obligations herein undertaken or resulting out of operations conducted by the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such injury, claim, damage, loss or expenses is caused in part by a party indemnified hereunder, save and except claims or litigation caused by or resulting from the sole negligence of the party indemnified hereunder.

**BONDS**

7. The Subcontract shall furnish performance and payment bonds in a form satisfactory to the Contractor and in the Department of the Treasury's approved sureties list, in an amount equal to the Subcontract sum, which bonds shall carry the surety's consent to changes in price and time of performance necessary to conform to Prime Contract requirements. Furnishing of said bonds shall be a condition precedent to the Contractor's obligation to release partial payments. Contract price includes the amount shown in **ATTACHMENT B** to cover the Subcontractor's cost for the bond.

**SHOP DRAWINGS, SAMPLES AND DATA SUBMISSIONS**

8. All submittals such as shop drawings, catalogs, samples and material lists required by Prime Contract, which pertain to this work, shall be furnished in a complete and timely manner. Subcontractor shall be responsible for delays because of failure to do so and for any deviation from plans and specifications. All deviations from the Prime Contract documents must be noted clearly on the submittals, and by separate cover letter the Subcontractor shall state reasons for the deviation and refer to the applicable contract provision. The complete set of submissions for this Subcontract work shall be submitted by the Subcontractor to the Contractor within thirty (30) days from the date of this Subcontract, unless otherwise stated in the Contractor's Schedule of Progress. Approval by the Owner or the Contractor does not constitute a waiver or modification of the Prime Contract requirements.

**TIME IS OF THE ESSENCE**

9. Time is of the essence. The Contractor has the right to direct the manner in which the Subcontractor performs its work. Subcontractor shall proceed with the performance of the work at such time and in such sequence as the Contractor may direct and/or as required by the Schedule of Progress, which may be updated and revised from time to time by the Contractor as working conditions require, including overtime or shift work performance as necessary. If overtime or additional shifts are required solely to accelerate project completion through no fault of the subcontractor, it shall be authorized in writing prior to such acceleration effort and be paid for by the Contractor. Payments due may be withheld to insure timely progress and completion of work. The Subcontractor shall be liable for all losses and damages incurred by the Contractor (including consequential damages) due to inexcusable delays of the Subcontractor in the performance of the work, including delay costs not reimbursable from the Owner due to concurrent, inexcusable delays of the Subcontractor.

**EXTENSIONS OF TIME**

10. Subcontractor shall be entitled to an extension of time for performing and completing the work covered by this subcontract upon the same terms and conditions an extension of time is allowable under the Prime Contract, and only to the extent that an extension of time is actually granted to the Contractor by Owner, or its representative under the Prime Contract. The Subcontractor shall give notice of the excusable delay to the Contractor in writing within three (3) calendar days from the beginning of said delay in order that the Contractor may in turn notify the Owner. If notice is not given timely, said excusable delay may be considered waived. The Owner's decision, or its representative's, with regard to the delay, including the assessment of liquidated damages, shall be binding upon and chargeable to the Subcontractor, subject to the disputes procedure provided in the Prime Contract.

**DAMAGES FOR DELAY**

11. The Contractor shall not be independently liable to Subcontractor for any unforeseeable delay or interference occurring beyond the Contractor's control or for delay or interference caused by Owner or other subcontractors or suppliers. Subcontractor shall only be entitled to reimbursement for any damages for delays recovered on its behalf by the Contractor from the Owner or others. The Subcontractor shall have the right, at its expense, to exercise all provisions of the Prime Contract to recover said damages against the Owner. In the event that the Contractor seeks to recover damage for delay against the owner or others and the Subcontractor participates in such claim, the Subcontractor shall be responsible for its pro rata share of any legal expert or other expenses in presenting and/or prosecuting the overall claims. The Contractor shall have the right, at any time and for any reason, to delay or suspend the whole or any part of the work herein. A time extension shall be the sole and exclusive remedy of the Subcontractor for delays or suspensions caused by Contractor, even if the delays or suspensions were: (1) of a kind not contemplated by the parties, (2) amounted to an abandonment of the contract, or (3) were caused by active interference.

**SCHEDULE**

12. The Contractor may schedule this project using CPM Schedule techniques and/or simple bar charts. Subcontractor agrees to meet with the Contractor and to provide the necessary detailed information to properly depict activities, including their costs and duration, at no additional cost to the Contractor. All such data shall be provided within fifteen (15) days of the Contractor's written notice and request. The Contractor may at its option withhold making payments to the Subcontractor until the Subcontractor has provided said information. The Contractor may modify and change the schedule from time to time as it deems appropriate in accordance with actual performance conditions. Subcontractor shall perform the work as directed by such schedules as expeditiously as possible despite any pending disputes. See **ATTACHMENT E** for supplemental schedule information.

**DEFAULT TERMINATION**

13. The following events determined by the good faith judgment of the Contractor shall be deemed a breach of this Agreement by the Subcontractor: Failure to expeditiously prosecute and complete the whole or any part of the work in accordance with the current Schedule of Progress and/or directions from the Contractor, failure to pay for labor and material, payroll taxes, contributions or insurance premiums; interference with the performance of work by others for any reason; an act of bankruptcy or insolvency; or any other material failure to fulfill obligations of this Subcontract or of the Prime Contract concerning the Subcontractor's work or responsibilities. If the Subcontractor breaches the Subcontract, the Contractor may terminate Subcontractor's right to proceed upon three (3) days written notice. In the event that the Contractor believes in good faith that the work is being endangered by the Subcontractor's failure to prosecute the work or take action, such written notice may be omitted and the Subcontractor's performance in whole or in part may be

immediately terminated. The Contractor may then have the work completed and may use Subcontractor's material, supplies, tools and equipment to complete. Subcontractor and its surety shall continue to be liable for all costs to complete and any damages and expenses including reasonable counsel fees, liquidated damages assessed by owner and other liabilities which may result from the default and breach, without waiver of any other rights or remedies available to the Contractor, including right of setoff and collection of any funds which may be due Subcontractor under other subcontracts with the Contractor. If the Contractor wrongfully exercises its default option under this Article, the Subcontractor's remedy shall be solely and exclusively under Article 27, Termination for Convenience.

The Subcontractor agrees that in the event the Contractor is terminated for default by the Owner, all disputes relating to or arising out of the Subcontract shall be stayed pending the final resolution of the Contractor's termination for default in accordance with the administrative and/or judicial disputes procedures in the prime contract. The Subcontractor further agrees that all payment bond actions by the Subcontractor against the Contractor shall be stayed pending the final resolution of the Contractor's termination for default. In the event that the Owner's termination for default of the Contractor is upheld, the Subcontractor agrees that the amount of any recovery the Subcontractor is entitled to from the Contractor shall be limited to the recovery allowed pursuant to Article 27, Termination for Convenience.

## EXTRA WORK

14. The Contractor may at any time direct the Subcontractor to perform extra work or changes under this Subcontract. Only extra work authorized by the Contractor as an extra or change in writing shall be paid for by the Contractor. If the extra work direction does not originate from Owner's direction and there is no prior agreement on price, then Subcontractor shall be paid for the actual direct costs of said work plus fifteen percent (15%) for overhead, profit, supervision and small tools, which will constitute the entire amount due the Subcontractor for the extra work, including any impact or delay effect.

## OWNER CHANGES

15. Changes ordered by Owner shall be performed and paid for in accordance with the terms of the Prime Contract, including all rights of dispute and appeal, provided reservation and exercise of said rights to not interfere with the progress of the work. Payment for Owner changes shall be made in accordance with Paragraph 5, Price and Payment, and payment for Owner changes shall not be due the Subcontractor as a specific condition precedent until the Contractor from the Owner receives said payment.

## CONTRACT INTERPRETATION

16. The Contractor's interpretation of contract requirements shall be binding upon Subcontractor and complied with, except that Subcontractor shall have the right to claim adjustment of the contract because of said interpretation, if said claim is made in writing within forty-eight (48) hours after ruling and direction.

## DISPUTES

17. Disputes arising out of Owner acts, omissions or responsibilities shall be resolved in accordance with the disputes procedures in the Prime Contract. Subcontractor shall have the right to exercise the Contractor's rights at the Subcontractor's sole cost and shall be bound thereby. The Contractor shall have no direct liability to the Subcontractor except to give the Subcontractor the opportunity to exercise the rights in the Prime Contract. The Subcontractor shall be required as a condition precedent to submitting a claim against the Owner to certify its claim in accordance with all certification requirements in the Prime Contract. Subcontractor agrees to indemnify and hold harmless the Contractor for any defects or misrepresentations in its certifications, including any relating to cost or pricing data. In the event that arbitration is provided for in the Prime Contract for disputes between the Owner and the Contractor, Subcontractor specifically agrees to submit its disputes arising out of said Owner acts, omissions or responsibilities in any arbitration proceeding between the Owner and the Contractor. Subcontractor shall be given the opportunity to confer with the Contractor in the selection of arbitrators, unless the dispute is solely one between the Owner and Subcontractor, in which event the Subcontractor may make the selection of arbitrators in the Contractor's name. All disputes between the Contractor and Subcontractor, not involving the Owner's acts, omissions or responsibilities shall, at the contractor's sole option, be resolved by arbitration in accordance with the rules of the American Arbitration Association. Subcontractor specifically agrees that any such arbitration proceedings shall, at the Contractor's sole option, be consolidated with any arbitration proceedings between the Contractor and any other party.

Subcontractor specifically agrees that any dispute with the Owner or the contractor shall not interfere with Subcontractor's progress of its work in any manner, and that Subcontractor shall proceed with its work as ordered, subject to claim. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any court having jurisdiction thereof. Any such award shall be binding and enforceable against any persons, surety and/or bonding company, which guarantee the performance by the Subcontractor of this Agreement in any manner.

## BACKCHARGES

18. All charges and back charges assessed by the Contractor against the Subcontractor shall be deemed accepted by Subcontractor unless rejected in writing within thirty (30) days. The Contractor is authorized to deduct and offset from any payments due Subcontractor an amount equal to any and all sums, obligations, liabilities, back charges, claims (liquidated or unliquidated) owed by Subcontractor to Contractor arising under this Subcontract or any other contract or agreement between the Subcontractor and the Contractor.

## PLANT AND CLEANUP

19. Subcontractor shall provide its own plant and facilities, including scaffolding and hoists, do its own cleanup, and repair or replace damaged, defective and defaced work caused by its own negligence. The Subcontractor shall cleanup and remove from the site all of its rubbish, debris, etc. on a daily basis, unless the Contractor directs otherwise. Upon completion of the subcontract work, all

Subcontractor's materials, equipment, etc. must be immediately removed from the jobsite by Subcontractor. Failure to comply will permit the Contractor to do so and backcharge Subcontractor for the cost. If Subcontractor uses the Contractor's hoist, scaffolding or facilities, it will be responsible for the operating expenses of such equipment when in use for Subcontractor's benefit.

## BANKRUPTCY AND DELINQUENT TAXES

20. In the event of any act of bankruptcy insolvency by the Subcontractor or notice of levy involving delinquent taxes owed by Subcontractor, the contractor shall have the right to withhold payments and apply the same to secure performance of the Subcontract without prejudice to al other rights against Subcontractor or its surety.

## RESPONSIBILITY FOR WORK IN PLACE

21. The Subcontractor shall check all work performed by others necessary to "receive" the Subcontractor's work. Failure to give notice of any discrepancy shall relieve the Contractor of any responsibility therefore. The Subcontractor shall be responsible for all field measurements and shall check elevations and grades to insure proper fitting of its work. It shall not be incumbent upon the Contractor to discover any mistakes, errors, omissions or deviations from the contract requirements in the subcontract drawings, and the Owner's final approval of drawings made by the Subcontractor shall not relieve the Subcontractor from responsibility for unauthorized changes, deviations or omissions or for error of any sort in its drawings.

## LICENSES AND FEES

22. Subcontractor shall be responsible for all taxes, permits, licenses and fees necessary to perform its work, including any increase therein, if any, during the life of the Subcontract.

## LABOR FORCE

23. Subcontractor shall be responsible for performance regardless of any interference of any trades council or other labor or union organization. Any work stoppage by employees which will in the opinion of the Contractor unreasonably delay the work will be a breach of the Subcontract subject to the rights set forth in Paragraph 13. The Subcontractor shall immediately remove from the work such of his employees as the Contractor shall deem incompetent, careless, insubordinate or otherwise undesirable. The Subcontractor shall employ at all times a sufficient number of workmen with sufficient equipment and proper materials which in the opinion of the Contractor shall be required to prosecute the work in a diligent and expeditious manner.

## NONDISCRIMINATION

24. Subcontractor shall not discriminate against any employee or applicant for employment, advancement, transfer, layoff or termination because of race, religion, color, sex or national origin. All Equal Opportunity or affirmative action requirements of the Prime Contract shall be obligations of the Subcontractor.

## SUPERINTENDENCE

25. Subcontractor shall employ full-time on the jobsite a competent Superintendent, satisfactory to the Contractor with full authority to act on Subcontractor's behalf. The Contractor shall have the right to require the Subcontractor to replace the Superintendent if, in the opinion of the Contractor, the Subcontractor's Superintendent is not satisfactorily performing the work.

## PATENT INFRINGEMENT

26. Subcontractor shall indemnify the Contractor from any use or infringement of patents.

## TERMINATION FOR CONVENIENCE

27. Contractor shall have the right to terminate this Agreement for its own convenience for any reason by giving notice of termination effective upon receipt thereof by Subcontractor. Termination for default under Paragraph 13, if wrongfully made, shall be treated as a termination for convenience. Settlement with the Subcontractor shall be accomplished in accordance with the provisions of the Termination for Convenience clause in the Prime Contract. If the Termination for Convenience clause in the Prime Contract is not applicable, the Subcontractor shall only be paid either the actual cost for work and labor in place, plus fifteen percent (15%), or a pro rata percentage of the Subcontract amount equal to the percentage of completion for the Subcontractor's work as approved by the Contractor, whichever is less. Subcontractor shall not be entitled to anticipated profits on unperformed portions of the work

## ASSIGNMENT

28. No assignment hereunder, including an assignment of proceeds due or to become due to the Subcontractor is allowed without prior written approval of the Contractor.

## NOTICES

29. All notices required under this Subcontract or the Prime Contract shall be addressed to Contractor's office located at **14674 Rothgeb Drive, Rockville, Md. 20850.** Notices required by the various provisions of the Prime Contract (not otherwise dealt with herein) shall be due in the Contractor's office in one-half (½) the time specified in the Prime Contract so that Contractor will have sufficient time to forward its notice within the required period. Failure of Subcontractor to forward notices in a timely manner as required by the various equitable adjustment provisions of the Prime Contract shall operate to waive its rights to any such adjustments if the Owner rejects the claim.

## OWNER APPROVAL

30. This Agreement is contingent upon Subcontractor or its product being approved by the Owner. If a disqualification occurs because of failure to comply with and strictly fulfill the obligations herein, said failure shall be deemed a breach by the Subcontractor. Any other rights of disqualification by Owner shall render this Agreement null and void.

## RECITATION, SEVERABILITY AND WAIVER

31. Attachments are part of this Agreement. If this Agreement is retained by Subcontractor without executing and returning same within fifteen (15) days, it shall be deemed accepted; however, acceptance in writing is a condition precedent to payment due hereunder. The Subcontractor shall not deal directly with or work directly for Owner. This instrument is the entire Agreement between the parties. If any provision herein is held to be invalid by any competent court, the remaining Agreement shall survive. This Agreement shall control any inconsistency in any documents referred to or incorporated by reference. It is further agreed that no action or failure to act by the Contractor shall constitute a waiver of any breach of any term or condition in the Agreement or any subsequent breach thereof, nor shall such action or failure to act constitute a waiver of any right offered Contractor under this Agreement.

## OSHA

32. Subcontractor shall comply with OSHA and any other relevant and applicable federal, state and local safety regulations, standards and requirements. Subcontractor shall indemnify Contractor from any failure to comply with these requirements including fines and abatement costs and delays to project. Failure to comply shall be a breach of contract, subject to provisions of Paragraph 13.

## LIQUIDATED DAMAGES

33. In the event that liquidated damages are assessed against the Contractor and it is determined that Subcontractor is responsible to the Contractor for said liquidated damages, then Subcontractor shall pay to the Contractor liquidated damages in addition to any damages incurred by the Contractor as the result of Subcontractor's failure of performance.

## MECHANIC'S LIENS

34. Subcontractor hereby waives it right to any mechanic's liens on the property of the Owner to the extent allowed by law.

## EXECUTION

35. This subcontract must be executed by the Subcontractor and returned to the Contractor within fifteen (15) days of its receipt by the Subcontractor. Until the subcontract is executed and returned to the Contractor, along with any required bonds and certificates of insurance, the Contractor has the right to withhold any payment due the Subcontractor.

## GOVERNING LAW

36. This subcontract shall be governed by the laws of the State where Contractor has its principal office and any actions or lawsuits arising hereunder to the extent permitted by law shall be brought in the District where Contractor's principal office is located without regard to principles of conflict of laws or forum non-convenience.

## ATTACHMENTS

37. The following attachments are included as part of this contract:

**ATTACHMENT A**: Prime Contract Documents
**ATTACHMENT B**: Scope of Work and Schedule of Values. Includes Bond amount, if required.
**ATTACHMENT C**: Davis-Bacon Wage Rates applicable to this contract
**ATTACHMENT D**: Subcontract Information Package
**ATTACHMENT E**: Supplemental Schedule Information

SENATE ASPHALT
Subcontractor

[signature]
Signature

Kirk D. Junco, Vice President
Name & Title

Date: March 29, 2004

WILLIAM V. WALSH CONSTRUCTION CO., INC
Contractor

[signature]
Signature

James V. Walsh CEO
Name & Title

Date: [illegible]

***Subcontractor to sign and initial each sheet and return both copies of the Subcontract Agreement to the Contractor within fifteen days. The Contractor will then sign and return one copy for the Subcontractor's files.***

ATTACHMENT A

**Prime Contract Documents**

Subcontractor warrants that it is thoroughly familiar with the site conditions and the Prime Contract Documents (including plans and specifications, general provisions, general and special conditions). The following plans and specifications are made a part of this contract:

**Standard Specifications for Construction of Roads and Bridges on Federal Highway Projects (FP-96) Dated 1996**

**Federal Highway Administration Eastern Federal Lands Highway Division Special Contract Requirements: Project PLH-NACC 25(1)**

**Section 636 Supplemental Specifications: District of Columbia Department of Public Works Special Contract Requirements: Project PLH-NACC 25(1)**

**Drawings 99% Plans for Proposed PLH-NACC 25(1) (see cover sheet)**

| Sheet Number | |
|---|---|
| A1 | Title Sheet |
| A2 | Conventional Symbols and Abbreviations |
| A3 | Location Map and Construction Signing Plan |
| A4 | Construction and Drainage and Utility Plan Sheet Layout |
| A5 | Signing and Striping, Traffic Control, and Erosion Control Plan Sheet Layout |
| B1-B7 | Typical Sections |
| C1-C6 | Tabulation of Quantities |
| D1-D31 | Schedules and Summaries |
| E1 | Staging Area Plan |
| F1-F4 | Survey Control Information |
| G1 | Alignment Plan and Horizontal Curve Data |
| H1-H28 | Construction Plans and Profiles |
| I0-I15 | Drainage and Utility Plans |
| J1-J15 | Drainage Profiles |
| K1-K17 | Lighting Plans |
| L1-L8 | Barrier Wall Architectural Profiles |
| M1-M8 | Barrier Wall Structural Profiles |
| N1 | Erosion Control Narrative |
| N2-N6 | Erosion and Sediment Control Plans |
| O1-O4 | Signing and Striping Plans |
| P1-P6 | Traffic Signal Plans |
| R1 | Bridge Approach Repairs |
| S1-S7 | Pedestrian Plaza Plan, Bollard and Barrier Wall Details |
| T1-T52 | Standards and Details |
| U1-U22 | Cross Sections |

Initial & Date: [handwritten initials and date]

ATTACHMENT B

## Scope of Work

### Lincoln Circle and Approach Way Rehabilitation – Task Order 7

| PAY ITEM/ SPEC. | WORK DESCRIPTION | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 41301x | Asphalt Pavement Milling | 11,696 | $m^2$ | $3.25 | 38,012 |
| 41301x | Daniel French Drive 40mm Milling | 0 | $m^2$ | $3.25 | 0 |
| 41301x | Bridge Approach Milling | 120 | $m^2$ | $3.25 | 390 |
| 41801AD | Superpave Asphalt Concrete, 9.5 mm agg, Type 4 | 2,582 | t | $67.70 | 174,801 |
| 41801AD | Bridge Approach Superpave Asphalt Concrete, 9.5 mm agg, Type 4 | 73 | t | $67.70 | 4,942 |
| 41801AD | Daniel French Drive Superpave Asphalt Concrete, 9.5 mm agg, Type 4 | 168 | t | $67.70 | 11,374 |
| 41801CD | Superpave Asphalt Concrete, 19 mm agg | 524 | t | $65.25 | 34,191 |
| 41801CD | Bridge Approach Superpave Asphalt Concrete, 19 mm agg | 80 | t | $65.25 | 5,220 |
| 41801CD | Daniel French Drive Superpave Asphalt Concrete, 19 mm agg | 333 | t | $65.25 | 21,728 |
| 41802CD | Superpave Asphalt Concrete, 19 mm agg, Wedge and Leveling | 2,814 | t | $65.25 | 183,614 |
| | | | | | |
| | | | | | 474,272 |

**Total Contract** $ 476,772*

Scope Notes:

- Price is for all work to be completed in the year 2005
- Senate Asphalt will conduct a winter shutdown for approx. 30 days beginning around February 1, 2004
- This is a unit price proposal based on bid quantities from drawings titled "Rehabilitation of Lincoln Memorial Circle," (including: typical sections, tabulations of quantities, construction plan, profile and traffic control plan) see Attachment A "Prime Contract Documents".
- Proposal includes 9 mobilizations for asphalt laydown & 8 mobilizations for milling. Additional mobilizations are $1,500.00 each.
- Truck and equipment access to be provided by others.
- Prices are not based upon scale wages.
- Specifically excluded: maintenance of traffic operations
- Additional exclusions: winter pavement maintenance, survey/layout, excavation, earthwork, undercut, proofrolling, stonework, patching/utility patching, utility adjustments, sawcut, prime, stone under curb/gutter and concrete flatwork, curb/gutter & concrete flatwork, herbicide, offsite work, fine grading, pavement markings (either temporary or permanent), bond, trails, signs and testing.

*Includes Bond

Initial & Date: [illegible]

ATTACHMENT C

**Davis-Bacon Wage Rates**

This project requires submission of certified payroll information and is subject to periodic wage rate interviews by Government personnel. The following wage rate decision(s) are applicable to the work under this contract.

**General Decision Number DC 020003 Dated May 24, 2002**

Initial & Date: [illegible]

ATTACHMENT D

## Subcontract Information Package

I Requisition Requirements

Ia Requisition Form

Ib Subcontract Affidavit, Partial Release and Waiver of Liens

II Certified Payrolls and Labor Compliance Requirements

IIIa Affirmative Action and Minority Utilization

IIIb Non-Discrimination in Employment

IV IRS Business Regulations

V Insurance Requirements

VI Special Project General Conditions, Project Phasing, Safety, Security, Etc.

VII Sales Tax Requirements

Initial & Date:

ATTACHMENT E

## Supplemental Schedule Information

The Contractor may schedule this project using CPM Schedule techniques and/or simple bar charts. Subcontractor agrees to meet with the Contractor and to provide the necessary detailed information to properly depict activities, including their costs and duration, at no additional cost to the Contractor. All such data shall be provided within fifteen (15) days of the Contractor's written notice and request. The Contractor may at its option withhold making payments to the Subcontractor until the Subcontractor has provided said information. The Contractor may modify and change the schedule from time to time as it deems appropriate in accordance with actual performance conditions. Subcontractor shall perform the work as directed by such schedules as expeditiously as possible despite any pending disputes.

**Contract completion is Sept 5, 2005. Onsite work for subcontractors will start approximately March 1, 2004. CPM to be issued for coordination**

Initial & Date: [illegible]

# Exhibit B

Jun. 27. 2007 3:06PM

THE AMERICAN INSTITUTE OF ARCHITECTS

Bond No. 400SU0997

*AIA Document A312*

# Payment Bond

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):

William V. Walsh Construction Co., Inc.
14674 Rothgeb Drive
Rockville, MD 20850

SURETY (Name and Principal Place of Business):

St. Paul Fire and Marine Insurance Company
14120 Newbrook Drive, Suite 160
Chantilly, VA 20151

OWNER (Name and Address):

McKissack & McKissack
1401 New York Avenue, NW, Suite 900
Washington, 20005-2102

CONSTRUCTION CONTRACT
Date: October 20, 2003
Amount: ($11,458,000.00 ) Eleven Million Four Hundred Fifty Eight Thousand Dollars and 00/100
Description (Name and Location): Security and Preservation of the Jefferson & Lincoln Memorials. Task Order #7, Lincoln Circle Rehabilitation, Washington, DC

BOND
Date (Not earlier than Construction Contract Date): November 4, 2003
Amount: ($ 11,458,000.00 ) Eleven Million Four Hundred Fifty Eight Thousand Dollars and 00/100
Modifications to this Bond: ☐ None ☒ See Page 6

CONTRACTOR AS PRINCIPAL
Company: (Corporate Seal)
William V. Walsh Construction Co., Inc.

Signature: ______________________
Name and Title:

SURETY
Company: (Corporate Seal)
St. Paul Fire and Marine Insurance Company

Signature: ______________________
Name and Title: Stephen A. Spencer
Attorney-In-Fact

(Any additional signatures appear on page 6)

*(FOR INFORMATION ONLY—Name, Address and Telephone)*
AGENT or BROKER:

Insurance Associates, Inc.
22 Baltimore Road
Rockville, MD 20850
(301) 838-9400

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

07 1576

FILED

SEP - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984 4

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2 With respect to the Owner, this obligation shall be null and void if the Contractor:

2.1  Promptly makes payment, directly or indirectly, for all sums due Claimants, and

2.2  Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

3 With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4 The Surety shall have no obligation to Claimants under this Bond until:

4.1  Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

4.2  Claimants who do not have a direct contract with the Contractor:

.1  Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

.2  Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

.3  Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5 If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

6 When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1  Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

6.2  Pay or arrange for payment of any undisputed amounts.

7 The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

9 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this

Jun. 27. 2007 3:06PM Case 1:07-cv-01576-RBW Document 1-4 Filed 09/04/2007 No. 7854 Page 4 of 5 P. 8

Bond shall be construed as a statutory bond and not as a common law bond.

14 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15 DEFINITIONS

15.1 Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

15.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

15.3 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:
This bond is hereby modified by changing the term "owner", referenced throughout this bond, to "obligee". It is therefore understood that McKissack & McKissack, as referenced in this bond, is the obligee and not owner.

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |
| Signature: ______ | | Signature: ______ | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987 A312-1984 6

**The St Paul**
*Surety*

St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company
United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Underwriters, Inc.
Fidelity and Guaranty Insurance Company
Principal Office: 385 Washington Street
St. Paul, Minnesota 55102

Seaboard Surety Company
Principal Office: 5801 Smith Avenue
Baltimore, Maryland 21209

## DUAL OBLIGEE RIDER

To be attached to bond at time of issuance

Bond Number 400SU0997

TO BE ATTACHED TO AND FORM PART OF PERFORMANCE AND PAYMENT BONDS NO. 400SU0997

dated concurrently with the execution of this Rider, issued by ST. PAUL FIRE AND MARINE INSURANCE COMPANY a Corporation, as Surety, on Behalf of WILLIAM V. WALSH CONSTRUCTION CO., INC. as Principal, and in favor of MCKISSACK & MCKISSACK and NATIONAL PARK SERVICE, as Obligees.

**IT IS HEREBY UNDERSTOOD AND AGREED** that the above-described bond(s) are hereby amended to include the following:

Notwithstanding anything contained herein to the contrary, there shall be no liability on the part of the Principal or Surety under this bond to the Obligees, or either of them, unless the Obligees, or either of them, shall make payments to the Principal, or to the Surety in case it arranges for completion of the Contract upon default of the Principal, strictly in accordance with the terms of said Contract as to payments, and shall perform all the other obligations required to be performed under said Contract at the time and in the manner therein set forth.

In no event shall the liability of the Principal and the Surety to the Obligees, or either of them, in the aggregate, exceed the penal sum stated in the attached bond(s).

**IT IS FURTHER UNDERSTOOD AND AGREED** that nothing herein contained shall be held to change, alter or vary the terms of the above-described bond(s) except as hereinbefore set forth.

Signed, sealed and dated this 4th day of November, A.D. 2003.

WILLIAM V. WALSH CONSTRUCTION CO., INC.
Principal

By: ____________________

MCKISSACK & MCKISSACK
By: ____________________
Obligee

NATIONAL PARK SERVICE
By: ____________________
Obligee

Surety: ST. PAUL FIRE AND MARINE INSURANCE COMPANY

By: ____________________
Attorney-in-Fact
Stephen A. Spencer