## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**    * | |
| **f/u/b THE LANE CONSTRUCTION** | |
| **CORPORATION d/b/a SENATE ASPHALT**    * | |
| **Plaintiff**    * | |
| **v.**    * | **Case No. 1:07-cv-01576** |
| | **Judge: Reggie B. Walton** |
| **WILLIAM V. WALSH**    * | **Contract** |
| **CONSTRUCTION CO., INC., et al.** | |
|    * | |
| **Defendants** | |
|    * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MOTION TO DISMISS

McKissack & McKissack of Washington, Inc. ("McKissack"), by undersigned counsel and pursuant to F.R.C.P. 12(b)(6), files this Motion to Dismiss, and for cause states as follows:

### FACTS

The construction project that is the subject of this action is the Lincoln Circle and Approach Way Rehabilitation, Task Order 7 (the "Project"). The owner of the Project is the National Park Service (the "Owner"). McKissack, an architectural and design firm, entered into a contract with the Owner for construction management and design services related to the Project. See Affidavit of Christine Merdon, attached hereto as **EXHIBIT 1**.

McKissack entered into a contract with William V. Walsh Construction Co., Inc. ("Walsh") for Walsh to perform the construction work at the Project. See Exhibit 1, ¶ 4. Walsh entered into a subcontract with The Lane Construction Co., Inc. d/b/a Senate Asphalt ("Lane"), to perform asphalt work on the Project.

Pursuant to 40 U.S.C. § 3131 (the "Miller Act"), Walsh, as the contractor performing the construction work on the Project, was required to provide a payment bond for the protection of

all persons supplying labor and materials to the Project, in accordance with the terms of the Miller Act.  Accordingly, Walsh, together with St. Paul Fire and Marine Insurance Company ("St. Paul"), as surety, furnished a payment bond for the project, Bond No.400U0997, as to which Walsh was the principal/obligor and the National Park Service and McKissack were the joint obligees (the "Bond").   A copy of the Bond is attached hereto as **EXHIBIT 2** (a copy of the Bond was also attached as Exhibit B to Lane's Complaint).

Lane filed its Complaint in this action on September 4, 2007.  Count III of the Complaint is a payment bond action by Lane against McKissack.  Lane alleges that McKissack executed the Bond as Principal.  See Complaint at ¶ 12.  McKissack did not furnish or execute the Bond.  See Exhibit 1, ¶ 6 and Exhibit 2.  McKissack is an *obligee* on the Bond, not a principal.  See Exhibit 2.   McKissack's role in the Project was in the nature of being an agent/construction manager to the National Park Service, the Owner.  See Exhibit 1, ¶ 5.  Acting in this capacity, McKissack hired Walsh as the prime contractor for the Project.  See Exhibit 1, ¶ 4.  Walsh, not McKissack, furnished and executed the required payment bond.  See Exhibit 2.  Walsh is the only principal named on the Bond.  See Exhibit 2.

Based on the foregoing facts, there is no plausible theory under which Lane may maintain a payment bond action against McKissack, and, as such, Count III of the Complaint fails to state a cause of action against McKissack and should be dismissed.    See *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (finding a complaint should be dismissed if a plaintiff can prove no set of facts in support of his claim which would entitle him to relief).

## ARGUMENT

## I.    MCKISSACK DID NOT FURNISH THE PAYMENT BOND

The Bond furnished by Walsh clearly states that Walsh is the "contractor" and McKissack, as well as the National Park Service, are obligees.  See Exhibit 2; Complaint at ¶ 13.

An "obligee" is defined as "one to whom an obligation is owed; a promisee or a creditor." *Black's Law Dictionary* 1106 (8th ed. 2004). Thus, under the bond, Walsh owes an obligation to McKissack and the National Park Service to ensure the payment of subcontractors and materialmen at the Project.

The Bond imposes no duty on McKissack to pay subcontractors such as Lane. It grants no independent right of action by Lane against McKissack. It does not establish privity of contract where none previously existed. The Bond was issued solely as a means to protect covered claimants from non-payment by Walsh, the principal, by permitting an action at law against Walsh and St. Paul.

Lane's assertion at Paragraph 34 of the Complaint that "McKissack has breached its obligations to Lane under the contracted Bond by failing to pay the balance due pursuant to contract" is plainly wrong and cannot be supported by any fact. See *Kowal*, 16 F.3d at 1276 (finding a court need not accept legal conclusions cast in the form of factual allegations).

Under no circumstances is McKissack a proper party to this action, because McKissack owes no obligation to Lane under the Bond. As such, Count III of the Complaint should be dismissed.

## II.    MCKISSACK WAS NOT REQUIRED TO FURNISH A PAYMENT BOND

Paragraph 12 of the Complaint suggests McKissack, as contractor to the Government, was required to provide a Miller Act payment bond. However, the Miller Act has not been construed in that fashion.

The Miller Act mandates that a contractor on a federal project furnish payment and performance bonds, of which the payment bond is issued for the protection of all persons supplying labor and materials in carrying out the work provided in the contract. 40 U.S.C. § 3131(2). The contractor required to provide the bonds is the contractor who enters a contract to perform "construction, alteration, or repair of any public building or public work of the Federal

3

Government."  40 U.S.C. §3131(b).  A construction manager who enters into a contract with the government, but performs none of the construction functions, and retains others to perform such work, is considered an agent of the government and is not required to furnish the Miller Act bonds.  Rather, the contractor actually performing the construction work is the Miller Act contractor required to furnish the bonds.  *See generally United Bonding Insurance Co. v. Catalytic Construction Co.*, 533 F.2d 469 (9th Cir. 1976); *U.S. ex rel. West Pacific Sales Co. v. Harder*, 225 F. Supp. 699, 702 (D. Or. 1963); *U.S. f/u/b Hillsdale Rock Co., Inc. v. Cortelyou & Cole, Inc.*, 581 F.2d 239, 242 (9th Cir. 1978); *Trustees of Bricklayers & Allied Craftsmen Local v. Reynolds Electrical & Engineering Co., Inc.,* 747 F. Supp. 606 (D. Nev. 1990).

McKissack is an architecture and design firm.  It performed none of the construction functions and, although nominally in privity with the National Park Service, acted at all times as its agent/construction manager.  Walsh was awarded the contract for "construction, alteration and repair" of the subject Project, and consequently is the "contractor" contemplated by the Miller Act.  McKissack was not required to procure a Miller Act payment bond, and it did not do so.

As such, Count III of the Complaint, a payment bond action by Lane against McKissack, fails to state a claim upon which relief may be granted, and McKissack must be dismissed from this action.

## III.    LANE HAS BEEN FULLY PAID BY WALSH

Lane filed its Complaint in this action on September 4, 2007, seeking $336,160.18 from McKissack, Walsh and St. Paul, jointly and severally.   On or about September 7, 2007, Walsh tendered Check No. 037874 to Lane, in the amount of $312,288.00. A copy of the said check is attached hereto as **EXHIBIT 3**.  On October 30, 2007, Walsh tendered Check No. 038099 to Lane, in the amount of $30,000.00, via express mail; a confirmation of receipt was received by Walsh.  A copy of the said check and confirmation receipt is attached hereto as **EXHIBIT 4**.  As such, since Lane filed its Complaint, Walsh has paid Lane $342,288.00, an amount in excess of

that sought by Lane in its Complaint.  As such, Lane can prove no set of facts in support of its

claim against McKissack and McKissack should be dismissed from this action.


Respectfully submitted,


BY:    /s/ Nicole L. Campbell
       Nicole Lefcourt Campbell, D.C. Bar #: 498490
       Huddles Jones Sorteberg & Dachille, P.C.
       10211 Wincopin Circle, Suite 200
       Columbia, Maryland 21044
       (301) 621-4120 (Telephone)
       (301) 621-4473 (Facsimile)
       campbell@hjpc.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the  31st  day of October, 2007, a copy of the foregoing

Motion to Dismiss was sent via email and U.S. Mail to:


Stephen J. Annino
Kasimer & Annino, P.C.
7653 Leesburg Pike
Falls Church, Virginia 22043
(703) 893-3914 (phone)
(703) 893-6944 (fax)


/s/ Nicole L. Campbell
Nicole L. Campbell

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA f/u/b** | * | |
| **THE LANE CONSTRUCTION** | | |
| **CORPORATION, d/b/a** | * | **Case No.: 1:07-cv-01576** |
| **SENATE ASPHALT, et al.** | | **Judge: Reggie B. Walton** |
| | * | **Contract** |
| **Plaintiffs,** | | |
| | * | |
| **v.** | | |
| | * | |
| **WILLAIM V. WALSH CONSTRUCTION** | | |
| **CO., INC., et al.** | * | |
| | | |
| **Defendants.** | * | |

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*
　　　　\*

## <u>AFFIDAVIT OF CHRISTINE MERDON</u>

I, Christine Merdon, am over eighteen years of age and am competent to testify with respect to all matters stated herein. To wit:

1.　　I am the Vice President of Program Managemnent for McKissack & McKissack of Washington, Inc. ("McKissack").

2.　　McKissack entered into a contract with the National Park Service for construction management and design services related to the Lincoln Circle and Approach Way Rehabilitation, Task Order 7 (the "Project").

3.　　McKissack hired William V. Walsh Construction Co., Inc. ("Walsh") to perform the actual construction functions required at the Project.

4.　　Pursuant to its contract, Walsh provided a payment bond for the Project which identified McKissack and the National Park Service as joint obligees.



EXHIBIT

1

5.    McKissack acted at all times as the agent/construction manager of the Owner, the National Park Service.

6.    McKissack did not furnish, as principal, a payment or performance bond for the subject Project.


**I SOLEMNLY AFFIRM UNDER PENALTIES OF PERJURY AND UPON PERSONAL KNOWLEDGE, THAT THE CONTENTS OF THE ABOVE AFFIDAVIT ARE TRUE AND CORRECT.**


Dated:  October, 23, 2007

Christine Merdon, P.E., CCM Vice President
Program Management
McKissack & McKissack of Washington, Inc.

# THE AMERICAN INSTITUTE OF ARCHITECTS



---

Bond No. 400SU0997

---

*AIA Document A312*

# Payment Bond

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

---

CONTRACTOR (Name and Address):

William V. Walsh Construction Co., Inc.
14674 Rothgeb Drive
Rockville, MD 20850

SURETY (Name and Principal Place of Business):

St. Paul Fire and Marine Insurance Company
14120 Newbrook Drive, Suite 160
Chantilly, VA 20151

OWNER (Name and Address):

McKissack & McKissack
1401 New York Avenue, NW, Suite 900
Washington, 20005-2102

CONSTRUCTION CONTRACT
   Date:  October 20, 2003
   Amount; ($11,458,000.00  ) Eleven Million Four Hundred Fifty Eight Thousand Dollars and 00/100
   Description (Name and Location): Security and Preservation of the Jefferson & Lincoln Memorials, Task Order
#7, Lincoln Circle Rehabilitation, Washington, DC

BOND
   Date (Not earlier than Construction Contract Date):  November 4, 2003
   Amount; (\$ 11,458,000.00  ) Eleven Million Four Hundred Fifty Eight Thousand Dollars and 00/100
   Modifications to this Bond:   ☐ None       ☒ See Page 6

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |
| William V. Walsh Construction Co., Inc. | | St. Paul Fire and Marine Insurance Company | |
| Signature: _____ | | Signature: _____ | |
| Name and Title: | | Name and Title: Stephen A. Spencer | |
| | | Attorney-In-Fact | |

(Any additional signatures appear on page 6)

---

*(FOR INFORMATION ONLY—Name, Address and Telephone)*
AGENT or BROKER:

Insurance Associates, Inc.
22 Baltimore Road
Rockville, MD 20850
(301) 838-9400

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

---

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984   4

---

**EXHIBIT**

**2**

tabbies

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2 With respect to the Owner, this obligation shall be null and void if the Contractor:

2.1  Promptly makes payment, directly or indirectly, for all sums due Claimants, and

2.2  Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

3 With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4 The Surety shall have no obligation to Claimants under this Bond until:

4.1  Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

4.2  Claimants who do not have a direct contract with the Contractor:

.1  Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

.2  Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

.3  Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5 If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

6 When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1  Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

6.2  Pay or arrange for payment of any undisputed amounts.

7 The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

9 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987                                                        A312-1984   5

Bond shall be construed as a statutory bond and not as a common law bond.

14   Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15   DEFINITIONS

15.1   Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the

Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

15.2   Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

15.3   Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:
This bond is hereby modified by changing the term "owner", referenced
throughout this bond, to "obligee". It is therefore understood that
McKissack & McKissack, as referenced in this bond, is the obligee and not owner.

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |
| | | | |
| Signature: _____ | | Signature: _____ | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006          A312-1984   6
THIRD PRINTING • MARCH 1987

Jun. 27. 2007  3:06PM                                                No. 0785   P. 9

**TheStPaul**
    *Surety*

St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company
United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Underwriters, Inc.
Fidelity and Guaranty Insurance Company
Principal Office:    385 Washington Street
                St. Paul, Minnesota 55102

Seaboard Surety Company
Principal Office:    5801 Smith Avenue
                Baltimore, Maryland 21209

**DUAL OBLIGEE RIDER**
To be attached to bond at time of issuance

Bond Number ___400SU0997___

TO BE ATTACHED TO AND FORM PART OF PERFORMANCE AND PAYMENT BONDS

NO. ___400SU0997___

dated concurrently with the execution of this Rider, issued by ___ST. PAUL FIRE AND MARINE INSURANCE COMPANY___
a Corporation, as Surety, on behalf of ___WILLIAM V. WALSH CONSTRUCTION CO., INC.___

as Principal, and in favor of ___MCKISSACK & MCKISSACK___
and ___NATIONAL PARK SERVICE___, as Obligees.

IT IS HEREBY UNDERSTOOD AND AGREED that the above-described bond(s) are hereby amended to include the following:

Notwithstanding anything contained herein to the contrary, there shall be no liability on the part of the Principal or Surety under this bond to the Obligees, or either of them, unless the Obligees, or either of them, shall make payments to the Principal, or to the Surety in case it arranges for completion of the Contract upon default of the Principal, strictly in accordance with the terms of said Contract as to payments, and shall perform all the other obligations required to be performed under said Contract at the time and in the manner therein set forth.

In no event shall the liability of the Principal and the Surety to the Obligees, or either of them, in the aggregate, exceed the penal sum stated in the attached bond(s).

IT IS FURTHER UNDERSTOOD AND AGREED that nothing herein contained shall be held to change, alter or vary the terms of the above-described bond(s) except as hereinbefore set forth.

Signed, sealed and dated this ___4th___ day of ___November___, A.D., ___2003___.

___WILLIAM V. WALSH CONSTRUCTION CO., INC.___
                        Principal

By:_____
___MCKISSACK & MCKISSACK___
By:_____
                        Obligee
___NATIONAL PARK SERVICE___
By:_____
                        Obligee

Surety:___ST. PAUL FIRE AND MARINE INSURANCE COMPANY___

By:_____
                      Attorney-in-Fact
                    Stephen A. Spencer

WILLIAM V. WALSH CONSTRUCTION CO., INC.
MAIN ACCOUNT
14874 ROTHGEB DR,
ROCKVILLE, MD 20850-5311

SANDY SPRING NATIONAL BANK OF MARYLAND    65-109/550
17801 Georgia Ave.
Olney, Maryland 20832

037874

Pay: *****************************312* thousand *288* dollars and no cents

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 9-07-07 | 37874 | $***312,288.00 |

PAY
TO THE
ORDER
OF

SENATE ASPHALT
6216 OXON HILL ROAD
OXON HILL, MD 20745

⑈037874⑈ ⑆055004096⑆ 54 02026 25⑈04

SENATE ASPHALT
DIVISION OF
THE LANE CONSTRUCTION CORPORATION
FOR DEPOSIT ONLY
LANE CONSTRUCTION CORPORATION
400045796

**EXHIBIT**

3

WILLIAM V. WALSH CONSTRUCTION CO., INC. / MAIN ACCOUNT
SENA001

038099

| DATE | INVOICE NO. | DESCRIPTION | INVOICE AMOUNT | DEDUCTION | BALANCE |
|------|-------------|-------------|----------------|-----------|---------|
| 9-30-07 | 93007 | PROG PYMT 03-128 502002500 | S    30000.00 | .00 | 30000.00 |

| CHECK DATE | 10-26-07 | CHECK NUMBER | 38099 | TOTALS | 30000.00 | .00 | 30000.00 |
|---|---|---|---|---|---|---|---|

**WILLIAM V. WALSH CONSTRUCTION CO., INC.**
MAIN ACCOUNT
14674 ROTHGEB DR.
ROCKVILLE, MD 20850-5311

SANDY SPRING NATIONAL BANK OF MARYLAND    65-109/550
17801 Georgia Ave.
Olney, Maryland 20832

038099

Pay: *********************************Thirty thousand dollars and no cents

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 10-26-07 | 38099 | $****30,000.00 |

PAY
TO THE
ORDER
OF

SENATE ASPHALT
6216 OXON HILL ROAD
OXON HILL, MD 20745

⑈038099⑈ ⑆05500⑈096⑆ 52 02026 5⑈01

EXHIBIT
4

**From:** TrackingUpdates@fedex.com [mailto:TrackingUpdates@fedex.com]
**Sent:** Wednesday, October 31, 2007 10:00 AM
**To:** ccavey@walsh-construction.com
**Subject:** FedEx Shipment 798297991543 Delivered

---

—

This tracking update has been requested by:

```
Company Name: WILLIAM V WALSH CONST COMPANY
Name:         Helen Roberts
E-mail:       Helen@walsh-construction.com
```

---

—

Our records indicate that the following shipment has been delivered:

```
Ship (P/U) date:           Oct 30, 2007
Delivery date:             Oct 31, 2007 9:59 AM
Sign for by:               S.POSEY
Delivered to:              Receptionist/Front Desk
Service type:              FedEx Priority Overnight
Packaging type:            Your Packaging
Number of pieces:          1
Weight:                    1.00 lb.
Special handling/Services: Residential Delivery
                           Deliver Weekday
```

Tracking number: <u>798297991543</u>

```
Shipper Information                      Recipient Information
Helen Roberts                            Mark schiller
WILLIAM V WALSH CONST COMPANY            VA Paving/Senate Asphalt
14674 ROTHGEB DRIVE                      14850 CONFERENCE CENTER DR STE 210
ROCKVILLE                                CHANTILLY
MD                                       VA
US                                       US
20850                                    201513844
```

Please do not respond to this message. This email was sent from an unattended
mailbox. This report was generated at approximately 9:00 AM CDT
on 10/31/2007.
To learn more about FedEx Express, please visit our website at <u>fedex.com</u>.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number
above,
or visit us at <u>fedex.com</u>.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA f/u/b** | \* | |
| **THE LANE CONSTRUCTION** | | |
| **CORPORATION, d/b/a** | \* | **Case No.: 1:07-cv-01576** |
| **SENATE ASPHALT, et al.** | | **Judge:  Reggie B. Walton** |
| | \* | **Contract** |
| **Plaintiffs,** | | |
| | \* | |
| **v.** | | |
| | \* | |
| **WILLAIM V. WALSH** | | |
| **CONSTRUCTION** | \* | |
| **CO., INC., et al.** | | |
| | \* | |
| **Defendants.** | | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**ORDER**

UPON REVIEW of Defendant McKissack & McKissack of Washington, Inc.'s Motion

to Dismiss and any Opposition filed thereto, it is this \_\_\_ day of _____, 2007, by

the United States District Court for the District of Columbia, **ORDERED** that

(1) The Motion be and is hereby **GRANTED**; and

(2)  Count III of the Complaint is hereby **DISMISSED WITH PREJUDICE.**

_____
The Honorable Reggie B. Walton
United States District Court for the
 District of Columbia

cc:

Nicole L. Campbell, Esquire
Huddles Jones Sorteberg & Dachille, P.C.
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044

Stephen J. Annino, Esquire
Kasimer & Annino, P.C.
7653 Leesburg Pike
Falls Church, Virginia 22043